UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | | |
|---|---|---|
| BARBARA ROBINSON and KENT ROBINSON, | ) ) ) | CIV. 04-5049 |
| Plaintiffs, | ) ) | |
| vs. | ) ) | MEMORANDUM OPINION AND ORDER |
| BRANDTJEN & KLUGE, INC., | ) ) ) | |
| Defendant. | ) ) | |

Plaintiffs, Barbara Robinson and Kent Robinson, filed a complaint against Defendant Brandtjen & Kluge, Inc. The complaint alleges multiple causes of action against the Defendant, including negligence; strict liability; breach of implied warranty; loss of consortium; and a claim for punitive damages. The Defendant has moved for summary judgment [doc. #31] and requested oral argument on the motion [doc. #35]. The Plaintiffs oppose the motion for summary judgment. All briefing has been received, and this matter is ripe for disposition.

## BACKGROUND

Barbara Robinson worked at Clark Printing in Spearfish, which was owned by Ivan Clark ("Clark"). Clark Printing owned an "N Series" Kluge 6 Roller Automatic Platen Printing Press ("the press"), which was manufactured by the Defendant in 1939 and sold in 1940 to the Deadwood Pioneer-Times. Clark Printing had acquired the press in 1991 or 1992. In about 1996 or 1997, Clark Printing modified the press, converting it from an automatic printing press to a foil-stamping press and removing automatic feeding components. Removal of the automatic feeder from the press eliminated a guard and safety feature built into the press. With the automatic feeder in place, feeding of stock (paper) into the press and its removal were

performed mechanically.

The foil-stamping unit that was added to the press was not manufactured by the Defendant. Foil stamping is a process that did not exist at the time the Defendant manufactured and sold the press. The addition of this unit, the removal of other features of the press, and the use of other features for foil-stamping instead of as intended as an automatic printing press, made it necessary for users to reach into the point of operation to remove stock that would stick inside.

On December 7, 2001, while she was working for Clark Printing, Ms. Robinson's hand was crushed in the modified press, which she was hand feeding to foil stamp a gold letter onto letterhead. Ms. Robinson had received five to ten minutes of training on the press, had never used any press before using the press at issue in this case, and was using the press for the first time on the day of the accident. Clark testified in his deposition that he believed five to ten minutes of training on the press was insufficient training. At the time of her injury, Ms. Robinson was not using the automatic feeder that was on the press when the Defendant manufactured and sold it.

Before Ms. Robinson's injury, starting in about 1977, the Defendant undertook a warning campaign, consisting of letters to purchasers of pre-1960 presses, warning the owners of the presses against altering or modifying the presses, and against manual or hand feeding of the presses. The previous owner of the press, Mr. Print, received numerous warning letters in 1986, 1988, and 1990. Computer Forms Company, also owned by Clark, received warning

letters regarding the press in 1988 and 1990. Clark admitted he signed for and received the warning letter the Defendant sent that warned against hand feeding and modifying the press.[1]

The Plaintiffs filed their Complaint with the Court on June 2, 2004. The Defendant now moves for summary judgment.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether summary judgment should issue, the facts and inferences from those facts are viewed in the light most favorable to the nonmoving party, and the burden is placed on the moving party to establish both the absence of a genuine issue of material fact and that such party is entitled to judgment as a matter of law. Id.; Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Once the moving party has met this burden, the nonmoving party may not rest on the allegations in the pleadings, but by affidavit or other evidence must set forth specific facts showing that a genuine issue of material fact exists. In determining whether a genuine issue of material fact exists, the court views the evidence presented based upon which party has the burden of proof under the applicable substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

---

[1] The parties placed some significance on the fact that the letters went to Computer Forms, Inc., rather than to Clark Printing. However, as noted in the Defendant's Reply Brief at 12 n.7, Clark owned both companies, the two were located in the same building, and Janet Davidson, who provided Ms. Robinson's training on the press, was an employee of Computer Forms, Inc. Thus, as the Defendant argues, Clark, as the owner of the press, was in the best position to know who operated the equipment and to whom warnings needed to be provided.

## DISCUSSION

The Defendant has moved for summary judgment, citing an absence of material fact on several different portions of the Plaintiffs' claims. The format of the Defendant's brief, as well as that of the Plaintiffs' response, make difficult the task of ascertaining the precise arguments made and which claims they address. The Court therefore will address the Defendant's arguments, roughly in the order the Defendant presents them, and will attempt to sort out the various issues in this case.

**I.  Strict Liability & SDCL 20-9-10**

In <u>Engberg v. Ford Motor Co.</u>, 205 N.W.2d 104 (1973), the South Dakota Supreme Court adopted the rule of strict liability as expressed in section 402A of the Restatement (Second) of Torts. Under this rule, "[o]ne who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer." Restatement (Second) of Torts § 402A(1) (1965); <u>see also</u> <u>Peterson v. Safway Steel Scaffolds Co.</u>, 400 N.W.2d 909, 912 (S.D. 1987). In the strict liability arena, "[t]hree broad classes of defects have emerged: manufacturing defects where individual products within a product line are improperly *constructed*, *design* defects involving the entire product line, and defect by *failure to properly warn* or instruct users of a product where such failure renders the product hazardous." <u>Peterson</u>, 400 N.W.2d at 912.

> The court has explained the effect this rule had on the law of products liability:
>
> Strict liability is an abandonment of the fault concept in product liability cases. No longer are damages to be borne by one who is culpable; rather they are borne by one who markets the defective product. The question of whether the

>manufacturer or seller is negligent is meaningless under such a concept; liability
>is imposed irrespective of his negligence or freedom from it.

Smith v. Smith, 278 N.W.2d 155, 160 (S.D. 1979). The court also has noted that, "[i]n strict liability the plaintiff need not prove scienter of the defendant, i.e., that defendant knew or should have known of the harmful character of the product without a warning." Peterson, 400 N.W.2d at 912. Instead, the court observed, liability for a defendant "arises from selling any product in a defective condition unreasonably dangerous to the user or consumer. It is the unreasonableness of the condition of the product, not of the conduct of the defendant, that creates liability." Id. Two defenses to strict liability exist: "In spite of the apparent certainty with which liability is affixed to a seller who markets a defective product, there are two circumstances where a user's conduct will bar recovery. These two are when the consumer assumes the risk or misuses the product." Smith, 278 N.W.2d at 161.

The Defendant first argues Ms. Robinson's injury was caused by substantial, unforeseeable post-manufacture rebuilding of the press. Under SDCL 20-9-10, a manufacturer is relieved of strict liability for alleged defects when the product at issue has been altered or modified. Peterson, 400 N.W.2d at 914. "A consumer creates manufacturer immunity under SDCL 20-9-10 by changing the product from its original form . . . ." Id. The statute provides as follows:

>No manufacturer, assembler or seller of a product may be held liable for
>damages for personal injury, death or property damage sustained by reason of
>the doctrine of *strict liability in tort based on a defect in a product, or failure to
>warn or protect against a danger or hazard in the use or misuse of such a
>product*, or failure to properly instruct in the use of such product, where a
>proximate cause of the injury, death, or damage was an alteration or
>modification of such product made under all of the following circumstances:
>>(1)  The alteration or modification was made subsequent to
>>the manufacture, assembly or sale of the product;

> (2) The alteration or modification altered or modified the purpose, use, function, design or manner of use of the product from that originally designed, tested or intended by the manufacturer, assembler or seller; and
> (3) It was not foreseeable by the manufacturer, assembler or seller of the product that the alteration or modification would be made, and, if made, that it would render the product unsafe.

SDCL 20-9-10 (emphasis added). As far as the Court can ascertain, the Plaintiffs' strict liability claims are based on the design defect of the press and the Defendant's failure to properly warn or instruct users of the press, both of which are alleged to have rendered the press hazardous. Accordingly, SDCL 20-9-10 would operate to bar the Plaintiffs' strict liability claims if the three-prong test listed in the statute is met.

The evidence before the Court indicates the press at issue was modified after its manufacture. See SDCL 20-9-10(1). The Court also concludes the undisputed evidence shows this modification altered the purpose, function, or use of the press from that originally designed, tested, or intended by the Defendant. See SDCL 20-9-10(2). The press was modified into a manually fed foil-stamping press, and foil-stamping processes did not even exist when the press was manufactured. The press was designed, intended, manufactured, and sold as an automatic press. Another federal court, in a trademark infringement case involving the Defendant, concluded that the act of adding foil-stamping and embossing functions to a pre-1960 Kluge press was a rebuilding of the press. Brandtjen & Kluge, Inc. v. Prudhomme, 765 F. Supp. 1551, 1571 (N.D. Tex. 1991). Thus, the similarities between the pre-1960 presses and the later rebuilt presses having foil-stamping and embossing functions did not lead to confusion. The court opined that "BKI has not proven that the typical purchaser would likely be confused as to the true source of these aftermarket additions since BKI did not sell

6

them at the time of original manufacture and because the rebuilt presses clearly emanate from a rebuilder who logically could be thought to alter the machine during the process of 'completely rebuilding' it." Id.[2] Additionally, the evidence shows other alterations were made to safety features built into the press, including removal of the automatic feeder and throw-off mechanism. In sum, the material evidence before the Court shows the press was modified from that which the Defendant manufactured. Accordingly, the Court concludes the first two prongs of SDCL 20-9-10 are met.

Under the third prong, the Defendant must show that it was not foreseeable that the modification would be made and, if made, that the modification would make the press unsafe. SDCL 20-9-10(3). The Court notes that foreseeability in this context "usually" is a jury issue. Peterson, 400 N.W.2d at 913. However, as the Defendant observes, some courts have concluded summary judgment is proper on the foreseeability issue when the rebuilding of the product was "radical." See Def. Br. at 12 (citing Temple v. Wean United, Inc., 364 N.E.2d 267, 271-72 (Ohio 1977); Ali v. Capitol Prods. Corp., No. 92 Civ. 7806 (PKL), 1995 WL 368446, at *4 (S.D.N.Y. June 20, 1995)).

One court, analyzing section 402A, has noted that the "reasonable foreseeability test must be applied with caution because, with the benefit of hindsight, any accident could be foreseeable. Without care, the imposition of strict products liability could result in a

---

[2]Interestingly, in the Texas case, Brandtjen & Kluge, Inc., expressed concern that another entity's installation of foil-stamping devices onto Kluge presses would cause performance and worker safety problems that could erroneously be attributed to Brandtjen & Kluge, Inc. The court in that case observed that "[t]here is no persuasive evidence that this unregistered mark is likely to be or is in fact associated by the typical purchaser with BKI or the KLUGE mark." Brandtjen & Kluge, Inc. v. Prudhomme, 765 F. Supp. 1551, 1571 (N.D. Tex. 1991).

manufacturer's becoming an insurer for every injury that may result from its product." Lightolier v. Hoon, 876 A.2d 100, 109 (Md. 2005) (internal citations and quotations omitted). "Objective foreseeability means reasonable foreseeability. The standard does not affix responsibility for future events that are only theoretically, remotely, or just possibly foreseeable, or even simply subjectively foreseen by a particular manufacturer." Oquendo v. Bettcher Indus., Inc., 939 F. Supp. 357, 362 (D.N.J. 1996) (internal citations and quotations omitted). "[T]he relevant time period for foreseeability is the time of design and fabrication, not thereafter." Id. at 363 (internal citations and quotations omitted). Under section 402A a plaintiff is required to prove the product was defective at the time it left the seller's hands. Restatement (Second) Torts § 402A, cmt. g. "In addition, Section 402A(1)(b) imposes strict liability only where the defective product reaches "the user or consumer without substantial change in the condition in which it is sold." Temple v. Wean United, Inc., 364 N.E.2d 267, 271 (Ohio 1977).

  The Court agrees with the Defendant that the rebuilding of the press in this case was "radical," which created immunity for the Defendant by "changing the product from its original form." Peterson, 400 N.W.2d at 914. The press on which Ms. Robinson was injured was not the same product manufactured by the Defendant over sixty years earlier. The Court concludes the Plaintiffs have not produced evidence to create a genuine issue of material fact that the modifications at issue here were objectively or reasonably foreseeable. The Defendant could not have anticipated at all, when it manufactured the press, that it would be converted to a manually fed foil-stamping press. The foil-stamping process did not exist at the time of manufacture which, as noted above, is the relevant time frame for assessing objective

foreseeability.  See Oquendo, 939 F. Supp. at 363.  As stated in the affidavit of Henry Brandtjen, filed in support of the motion for summary judgment, the trend in the printing industry was toward automation, not manual feeding, and the state of the art in the industry also shifted from labor-intensive manually fed machines to automated, mechanically fed presses.  See doc. #37 ¶ 18.  At the time of Ms. Robinson's injuries, the press no longer could be used as an automatic press, but had become "a one-of-a-kind, manually-fed foil stamping press," id. ¶ 11 (emphasis omitted), with at least sixteen different alterations from the original press, id. ¶ 12.  Also, the "automatic throw-off mechanism had been rendered inoperative by the use of tape or a rubber band."  Id.  The Defendant sold the N Series presses as automatic printing presses.  Ms. Robinson simply was not using a press that was "without substantial change in the condition in which it is sold."  Temple, 364 N.E.2d at 271.  Although foreseeability generally is a jury issue under South Dakota law, the Court concludes the instant case is one in which the issue can be decided as a matter of law.  Thus, summary judgment is granted as to the Plaintiffs' strict liability claim.  Furthermore, because the Court concludes summary judgment is proper on the strict liability claim, the Court does not address the Defendant's "misuse" defense.

**II.     Negligence**

   **A.     Superseding Cause**

The Defendant argues that unforeseeable post-manufacture events were a superseding cause of Ms. Robinson's injuries.  The South Dakota Supreme Court has ruled that this foreseeability issue is one of *duty*.  "Although foreseeability is a question of fact in some contexts, foreseeability in defining the boundaries of a duty is always a question of law.

Foreseeability in the 'duty' sense is different from foreseeability in fact issues bearing on negligence (breach of duty) and causation." Braun v. New Hope Twp., 646 N.W.2d 737, 740 (S.D. 2002). The court also has opined that "[w]hen the natural and continuous sequence of causal connection between the negligent conduct and the injury is interrupted by a new and independent cause, which itself produces the injury, that intervening cause operates to relieve the original wrongdoer of liability." Schmeling v. Jorgensen, 84 N.W.2d 558, 564 (S.D. 1957). The intervening cause also must be a *superseding* cause. "It must so entirely supersede the operation of the defendant's negligence that it alone, without his negligence contributing thereto, produces the injury." Id. Furthermore, "[w]here *because of lapse of time or otherwise*, the duty to prevent harm to another threatened by the actor's negligent conduct is found to have shifted from the actor to a third person, the failure of the third person to prevent such harm is a superseding cause." Braun, 646 N.W.2d at 741 (quoting Restatement (Second) of Torts § 452(2)).

"The intervening/superseding cause analysis questions the extent of the obligation, or duty, of the original actor who was negligent." Id. at 740. "The appropriate question 'is one of negligence and the extent of the obligation: whether the [original actor's] responsibility extends to such interventions, which are foreign to the risk the [original actor] has created. It is best stated as a problem of the scope of the legal obligation to protect the plaintiff against such an intervening cause." Id. (quoting W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 44 at 301 (5th ed. 1984)).

The Court concludes that, as to the Plaintiffs' negligence claim, Clark's modification of the press was a superceding, intervening cause that, as a matter of law, shifted liability from the Defendant to Clark. A number of factors contribute to the conclusion that the Defendant had no duty to the Plaintiffs. First, the modification of the press so completely changed the character of the machine that Clark's negligence superseded any alleged negligence of the Defendant. Second, the lapse of time from the time of manufacture to the time of Ms. Robinson's injury, as well as the lapse of time between the time of manufacture to the time in which foil stamping came in vogue, rendered it unforeseeable to the Defendant that the injury could occur. Id. at 741; Restatement (Second) of Torts § 452(2). Third, in the context of *duty*, it simply was not foreseeable to the Defendant that the press would have been so radically changed as to remove the safety and efficiency features built into it, effectively taking a step backward in platen press technology; the Defendant built the N Series press specifically for efficiency, speed, and safety, and the modifications to the press made it less efficient, slower, and unsafe. Under the undisputed facts of the present case, a reasonable person in the Defendant's position could not have foreseen the modifications that would be made to the press, reducing it from a state-of-the-art automatic press (in 1939), to a manually fed press (in 1997) rebuilt by the removal of safety features and the addition of foil stamping devices not even manufactured by the Defendant. See 63 Am. Jur. 2d § 209 (1996) (stating the duty of care in a negligence action against a manufacturer is the manufacturer's "obligation to conform to the standard of conduct of a reasonable person under similar circumstances"). Any negligence, and liability therefor, that possibly could have been imposed on the Defendant was removed by Clark's modification of the press. The Defendant's actions in this case fall outside

the "boundaries" of any duty it owed Ms. Robinson. The Defendant's motion for summary judgment is granted on the Plaintiffs' negligence claims.

      B.      **Failure to Warn**

The Defendant also argues it is not liable for failure to warn. This argument specifically refers to the Defendant's *post-sale* duty to warn consumers of dangers posed by the press, which also is a negligence claim. See Patton v. Hutchinson Wil-Rich Mfg. Co., 861 P.2d 1299, 1314 (Kan. 1993). However, the Defendant, rather than present specific arguments regarding its duty, or lack thereof, to Ms. Robinson, argues that its warnings were sufficient. In response, the Plaintiffs state that "there exists a continuing and post sale duty to warn." Pl. Br. at 25. Aside from that statement, the Plaintiffs nowhere address the existence of a duty on the part of the Defendant to warn of the dangers. The Court concludes, however, that summary judgment is proper on the failure to warn despite the parties' failure to fully brief this issue.

The Restatement (Third) of Torts: Products Liability provides as follows:

> (a) One engaged in the business of selling or otherwise distributing products is subject to liability for harm to persons or property caused by the seller's failure to provide a warning after the time of sale or distribution of a product if a reasonable person in the seller's position would provide such a warning.
> (b) A reasonable person in the seller's position would provide a warning after the time of sale if:
> > (1) the seller knows or reasonably should know that the product poses a substantial risk of harm to persons or property; and
> > (2) those to whom a warning might be provided can be identified and can reasonably be assumed to be unaware of the risk of harm; and
> > (3) a warning can be effectively communicated to and acted on by those to whom a warning might be provided; and
> > (4) the risk of harm is sufficiently great to justify the burden of providing a warning.

Restatement (Third) of Torts: Prods. Liab. § 10 (1998).  "'[T]he law does not contemplate placing the onerous duty on manufacturers to subsequently warn all foreseeable users of products based on increased design or manufacture expertise that was not present at the time the product left its control.'  If such a duty were imposed, it might well 'discourage manufacturers from developing safer products.'"  Modelski v. Navistar Int'l Transp. Corp., 707 N.E.2d 239, 246 (Ill. Ct. App. 1999) (quoting Carrizales v. Rheem Mfg. Co., Inc., 589 N.E.2d 569 (Ill. Ct. App.1991)).

South Dakota has not adopted the third Restatement, but the Eighth Circuit, in Novak v. Navistar International Transportation Corp., 46 F.3d 844, 850 (8th Cir. 1995), opined that under South Dakota law, a manufacturer may be charged with a post-sale duty to warn.  The Court finds Novak to be persuasive authority predicting that the South Dakota Supreme Court would adopt the third Restatement view regarding a post-sale duty to warn, if presented with the issue.  However, in this case, the Court need not predict what the South Dakota Supreme Court would do.  The Court instead concludes that, even if South Dakota would adopt the third Restatement, the Plaintiffs are unable to state a claim thereunder, as explained below.

The issue of whether a duty exists in a negligence case is a question of law for the court.  Casillas v. Schubauer, 714 N.W.2d 84, 88 (S.D. 2006).  In the particular context of a duty-to-warn claim under section 10 of the Restatement (Third), the Iowa Supreme Court concluded that "the comments to the Restatement refer to the need for the court to consider the four factors in deciding whether a post-sale breach of duty to warn claim should reach the jury.  Lovick v. Wil-Rich, 588 N.W.2d 688, 696 (Iowa 1999) (citing Restatement (Third) of Torts: Prods. Liab. § 10 cmt. a).  "Clearly, the particular circumstances of a case may permit a trial

13

court to utilize the factors to determine as a matter of law no duty existed." Id. Section 10 of the Restatement also notes that courts must carefully analyze cases to determine whether a case alleging a post-sale duty to warn should reach the trier of fact:

> As with all rules that raise the question whether a duty exists, courts must make the threshold decisions that, in particular cases, triers of fact could reasonably find that product sellers can practically and effectively discharge such an obligation and that the risks of harm are sufficiently great to justify what is typically a substantial post-sale undertaking. In deciding whether a claim based on breach of a post-sale duty to warn should reach the trier of fact, the court must determine whether the requirements in Subsection (b)(1) through (4) are supported by proof. The legal standard is whether a reasonable person would provide a post-sale warning. In light of the serious potential for overburdening sellers in this regard, the court should carefully examine the circumstances for and against imposing a duty to provide a post-sale warning in a particular case.

Restatement (Third) of Torts: Prods. Liab. § 10 cmt. a.

The Court concludes that the Defendant had no post-sale duty to warn Ms. Robinson of the alleged dangers the press presented. Ms. Robinson simply was a "member of a universe too diffuse and too large for manufacturers or sellers of original equipment to identify." Lewis v. Ariens Co., 751 N.E.2d 862, 867 (Mass. 2001) (citation omitted). Furthermore, even assuming the Defendant owed a post-sale duty to warn, the undisputed evidence shows the Defendant provided warnings, and that Clark Printing received the warnings. The Plaintiffs have not presented evidence showing the warnings were insufficient or that the Defendant acted in an unreasonable manner at all. That the warnings did not reach individual employees of Clark Printing was not a factor within the Defendant's control. Notwithstanding the Plaintiffs' contention that Ms. Robinson did not personally receive warnings about the press, the Defendant did not have a duty to warn each employee. "If plaintiff's employer . . . was fully aware of the hazard which proximately caused plaintiff's injury, then it was the duty of

plaintiff's employer to warn plaintiff of the hazard." Cook v. Branick Mfg., Inc., 736 F.2d 1442, 1446 (11th Cir. 1984) (citation omitted) (opining that "whenever a third party has a duty to warn of a dangerous condition in the workplace that duty is discharged by informing the employer of the dangerous condition–warning to each of the employer's individual employees who may be threatened by the dangerous condition then becomes the responsibility of the employer"). Regardless of the open and obvious danger (which the Defendant also argues existed) the press allegedly posed, the duty to warn Ms. Robinson of the danger fell on her employer. Any duty that the Defendant owed in this case was discharged. Summary judgment is granted on any claim the Plaintiffs might have for post-sale duty to warn.

### III.   Duty to Recall

The Defendant argues it had no duty to recall or retrofit the N Series press and, thus, cannot be held liable for the failure to do so. Under the Restatement view, sellers of products may be subject to liability due to a failure to recall when either a governmental directive requires the seller to recall a product, or when, in the absence of such a recall requirement, the seller undertakes to recall a product and fails to act as a reasonable person in conducting the recall. Restatement (Third) of Torts: Prods. Liab. § 11 (1998).

The Plaintiffs did not respond to the Defendant's argument regarding the duty to recall. However, their duty to recall claim fails. Nothing before the Court indicates that South Dakota permits a claim based on a manufacturer's duty to recall, or that South Dakota would follow the Restatement (Third) of Torts: Products Liability § 11. However, assuming South Dakota law provides for a duty to recall claim, no evidence has been presented to support any such claim. And, assuming South Dakota would follow the third Restatement, none of the evidence

before the Court indicates either of the events triggering a duty to recall, as outlined in section 11, occurred in this case. Accordingly, summary judgment is granted on the Plaintiffs' duty to recall claim.

## IV.     Breach of Warranty

The Defendant argues the Plaintiff's breach of warranty claim is barred by the four-year statute of limitations provided for such causes of action under SDCL 57A-2-275. Indeed, the statute of limitations on breach of warranty claims is four years. Laber v. Koch, 383 N.W.2d 490, 494 (S.D. 1986). The Plaintiff did not respond to the Defendant's argument. Having reviewed SDCL 57A-2-275, it appears to the Court that the statute applies to bar the Plaintiff's claim for breach of warranty, which was brought some sixty-five years after manufacture of the press at issue. Accordingly, summary judgment is granted as to the Plaintiff's breach of warranty claim.

## V.      Loss of Consortium

The South Dakota Supreme Court has "classified a husband's cause of action for loss of consortium as derivative in nature." Barger for Wares v. Cox, 372 N.W.2d 161, 165 (S.D. 1985). "As such, its validity depends on the validity of the main claim." Budahl v. Gordon & David Assocs., 287 N.W.2d 489, 493 (S.D. 1980). The court also has observed, "If the injured spouse is unable to recover for his own personal injuries, the cause of action of the other for loss of consortium also fails." Id. Accordingly, because summary judgment is granted on the underlying claims in this case, Mr. Robinson's claim for loss of consortium must be dismissed.

## VI.     Punitive Damages

The Defendant also seek summary judgment on the Plaintiff's punitive damages claim. "[A] claim for punitive damages must be based on some underlying cause of action, since, as a general rule, there is no separate and distinct cause of action for exemplary damages." Risse v. Meeks, 585 N.W.2d 875, 883 (S.D. 1998) (quoting 22 Am. Jur. 2d Damages § 741 (1995)). "Punitive damages merely constitute an element of recovery on the underlying cause of action." Id. Thus, the Plaintiffs' "claim for punitive damages is not an independent or additional cause of action which can be separated and stand on its own." Id. Because the Court has granted summary judgment on the remaining claims, summary judgment is granted on the Plaintiffs' punitive damages claim.

VII.   **Request for Oral Argument**

The Defendant has requested oral argument on the instant motion for summary judgment [doc. #35]. This Court rarely grants oral argument on summary judgment motions, and this case is not so exceptional as to warrant deviation from that general rule. The request for oral argument is denied. Based on the foregoing, it is hereby

ORDERED that the Defendant's motion for summary judgment (doc. #31) is GRANTED in its entirety.

Dated this 27th day of September, 2006.

BY THE COURT:

/s/ *Andrew W. Bogue*
ANDREW W. BOGUE
SENIOR DISTRICT JUDGE